Yvonne TARANGO, Plaintiff,

v.

JOHNSON & JOHNSON MEDICAL, INC., Defendant.

No. EP–95–CA–383.

United States District Court, W.D. Texas, El Paso Division.

Dec. 19, 1996.

Ronald P. McCluskey, El Paso, TX, for Plaintiff.

Stephen F. Fink, David M. Pryor, Thompson & Knight, P.C., Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FURGESON, District Judge.

On this day the court considered Defendant's Motion for Summary Judgment. After due consideration, the court is of the opinion that Defendant's Motion should be granted as to all claims.

### BACKGROUND

Tarango was first hired by Johnson and Johnson (El Paso) in 1980 as an Accounts Payable/Payroll Clerk. In 1985, she was promoted to the position of Planning Clerk II. Tarango continued in that position through July 1990, at which time she was promoted to the position of Expediter. Each time Plaintiff was promoted, she received an increase in salary. In 1992 and 1993, Johnson and Johnson was required to downsize its work force in El Paso. During this period of downsizing, in August of 1993, Plaintiff was transferred to the Warehouse Clerk II position, the complained of action in this case. Later, sometime in 1995, Plaintiff was promoted, on a temporary basis, to the Associate Buyer position to fill the position of an employee on maternity leave. Plaintiff has since attained permanent status as an Associate Buyer. A review of Plaintiff's salary history shows that she has made excellent progress inside the company. She started out earning a little over $11,000, and in a short period of fifteen years her salary grew to over $26,000. From everything this court has read, it seems obvious that Johnson and Johnson values Plaintiff as an employee, and that it went to great lengths to ensure Plaintiff would remain with it through the tough job reduction period. What is not obvious is exactly why Plaintiff who is doing better now than she has ever done would repay her company, a company that has treated her exceptionally well, with this lawsuit.

It is unclear from the record before the court whether there were any other Expediters at the time Plaintiff was promoted to that position. However, sometime after her promotion, the company hired Brian Hunt as an Expediter to work along side Plaintiff. According to the Declaration of Gregg D. Breitegan, Defendant's Director for Human Resources, Defendant decided that a downsizing of the workforce would be necessary at the El Paso facility in 1993–1994. Many workers were laid off and several were transferred to different positions within the company. Plaintiff was among those transferred to a different position, Warehouse Clerk II. Although Plaintiff's salary was not decreased, Plaintiff was now on a pay scale one grade lower than before (E instead of F).[1] The transfer from the Expediter to the Warehouse Clerk II position took place on August 16, 1993.[2]

[1] According to the Declaration of Gregg D. Breitegan, the letters designating various salary levels, of which there are five, are not indicative of the yearly raise increments and merits increases. Rather, the various levels are internal administrative tracking devices to help the company monitor salary levels and insure that they are competitive with similar positions elsewhere. While the maximum salary attainable increases with each ascending letter, according to the Deposition of Richard Gonzalez, a Group Manager with Defendant at the time of the events in question, it was quite common for an individual to jump to a higher level once they reached their peak. Plaintiff is a perfect example of that. She herself was thrice promoted in a ten year period, jumping from level D to level F.

[2] After Plaintiff complained to the company of its alleged discriminatory action related to her transfer to the Warehouse Clerk II position, Richard D. Gonzalez prepared a position paper

On September 5, 1995, Plaintiff filed suit in federal district court alleging violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and Title VII of the Civil Rights Act of 1964, alleging sex discrimination. *See* 42 U.S.C. § 2000e–2(a)(1). Subsequently, Plaintiff filed an amended complaint alleging retaliation by the company for her filing a complaint with the EEOC. Plaintiff's retaliation claim is based on two events subsequent to her transfer to the Warehouse Clerk II position: (i) Defendant's failure to interview Plaintiff for, and then to notify Plaintiff of the final disposition of, two Senior Buyer positions and (ii) Plaintiff's promotion to the Associate Buyer position on terms less favorable than those given other persons promoted at the same time.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Rule 56(c) provides that "[summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 533 (5th Cir.1996).

The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 21 F.3d 1368, 1371 (5th Cir.1994). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993).

Once the movant carries this burden, the burden shifts to the nonmovant to show that the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 323–26, 106 S.Ct. at 2553–54; *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. See *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Factual disputes that are unnecessary or irrelevant will

addressing each of Plaintiff's allegations. Attached as Exhibit 3 to Defendant's Motion for Summary Judgment, the paper notes, in part, that for the period of January 1, 1992 to August 16, 1993, a total of six reassignments/transfers (including Plaintiff's) took place within the office & clerical group at the El Paso facility. Out of the six, five were females, and Plaintiff was the only employee over the age of 40. As of August 16, 1993, the office & clerical group employed a total of 39 non-exempt employees, 24 of whom were female. Ten of the 39 employees were over

the age of 40. The record is unclear as to how many individuals at the El Paso plant were laid off or voluntarily left during the downsizing, nor the demographics of that group. The absence of these figures, however, in no way impedes the court from considering and granting Defendant's Motion for Summary Judgment. Plaintiff has not contested that there was a downsizing, and the court is satisfied that some sort of downsizing did occur, as attested to by several managers of Defendant.

not be counted. *Id.* (citing 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2725, p. 93–95 (1983)). In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Anderson,* 477 U.S. at 254–56, 106 S.Ct. at 2513–14.

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, summary judgment is proper. *Kelley v. Price Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994) (citing *Matsushita,* 475 U.S. at 577–78, 106 S.Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* (citing *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511). Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "a better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255–56, 106 S.Ct. at 2514. *Accord Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1200 (5th Cir. 1989); 10A C. WRIGHT, A. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2728 (1983).

## ANALYSIS

### A. Equal Pay Act

The court first considers Plaintiff's claim under the EPA. In part, the EPA provides that

No employer … shall discriminate, …, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed un-

der similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). The statute of limitations for bringing a claim under the EPA is two years from the date the cause of action accrues. *See* 29 U.S.C. § 255. If, however, the cause of action arises out of a willful violation, it may be commenced within three years after its accrual. *Id.* Since Plaintiff's complaint stems from her transfer from Expediter to Warehouse Clerk II, her cause of action accrued on August 16, 1993. Thus, unless Plaintiff's cause of action arises out of a willful violation, her claim under the EPA is barred by the statute of limitations.

Willfulness is a question of fact which necessarily raises questions of the Defendant's state of mind, knowledge intent and belief regarding the propriety of its actions. *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211, 218 (3rd Cir.1984). A summary judgment order is not defeated, however, merely because an issue of fact exists; the factual issue in dispute must be material to the resolution of the dispute. *Id.* Because Defendant has advanced a valid defense to the alleged EPA violation, Defendant's alleged willfulness is immaterial to the disposition of Plaintiff's claims. Notwithstanding this defense, however, the court independently finds that Defendant's actions were not willful and that Plaintiff's EPA claim is barred by the statute of limitations. Since the issue of alleged willful behavior and the statutory defense are intertwined, they will be discussed at the same time.

In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115, 123, (1988), the United States Supreme Court reaffirmed its standard for what constitutes willful behavior on the part of an employer, originally adopted in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–30, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523, (1985). In *McLaughlin,* The Supreme Court held that an employer acts willfully if the employer either "knows or

shows reckless disregard for the matter of whether its conduct [is] prohibited by the [EPA.]" *McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 1681, 100 L.Ed.2d at 123. Simple negligence on the part of the employer will not rise to the level of willfulness.

Under the EPA, Defendant is prohibited from paying Plaintiff less than a male employee for performing a job which requires equal skill, effort, and responsibility. Defendant admits that there was a slight pay differential between Plaintiff and Mr. Hunt, both of whom were Expediters at the relevant time in question. However, Defendant maintains that the pay differential was justified by Mr. Hunt's added responsibilities. Mr. Hunt was responsible for 29–30 accounts, while Plaintiff was responsible for only 4–5.[3] Additionally, Mr. Hunt was responsible for coordinating two projects: the Border Optimization for Operation Materials project and the kitting project. The fact that Mr. Hunt had additional responsibilities could, in the eyes of the Defendant, merit a pay differential between him and the Plaintiff. This alone takes the Defendant's actions outside the realm of willfulness. Why the two additional projects were assigned to Mr. Hunt instead of Plaintiff does not concern the court. The fact that they were assigned to Mr. Hunt, notwithstanding the fact that Mr. Hunt handled a greater number of suppliers on paper, would justify a pay differential for individuals holding the same job title. In addition, Mr. Hunt received better job evaluations than Plaintiff, receiving a rating of "Exceeds High Expectations" to Plaintiff's "Meets High Expectations." This, too, could be considered a factor in justifying the pay differential. Plaintiff has failed to point this court to a single piece of evidence establishing a genuine issue of material fact on the question of willful violation of the EPA. A simple allegation of willfulness in Plaintiff's complaint will not suffice to defeat summary judgment in the face of overwhelming evidence to the contrary. Thus, Plaintiff's claim under the EPA is barred by the statute of limitations and will be dismissed.

■■■■ But even assuming that Plaintiff's claim under the EPA is not time barred, summary judgment would still be proper because (1) Plaintiff has failed to establish a prima facie case under the EPA as a matter of law; and (2) Plaintiff has failed to carry her summary judgment burden to show that Defendant's non-sex based reason for the pay differential was simply pretextual. To establish a prima facie case under the EPA, Plaintiff has to show that (1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) she was paid less than a member of the opposite sex. *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986); *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983). Defendant concedes prongs one and three, but argues that Plaintiff cannot establish the second prong.

Once Defendant brought forth evidence establishing the lack of a genuine issue of material fact as to the second prong, the burden shifted to Plaintiff to show the existence of a genuine issue of material fact. Plaintiff must accordingly point this court to some admissible evidence showing the existence of a genuine issue of material fact to avoid summary judgment. This Plaintiff has failed to do. As discussed *supra*, Plaintiff did not perform a job requiring equal skill, effort, and responsibility as that of Mr. Hunt. Plaintiff's contention that having equal job titles automatically means performing work requiring equal skill, effort, and responsibility is clearly misplaced. To take away the flexibility of companies to assign added tasks to individuals based on ability, and to not have to create superficial titles along the way for fear of violating the EPA, would be counterproductive and fly in the face of reason. The evidence in this case clearly shows that even though both Plaintiff and Mr. Hunt held the title of Expediter, Mr. Hunt not only handled more accounts, but had additional

---

**3.** The court is aware that the simple quantity of accounts handled may not be an accurate measure of ultimate responsibility. One account may be the equivalent of five others. The volume of materials handled by the two Expediters would be a better measure. However, Plaintiff has failed to proffer any evidence, in the form of deposition testimony or otherwise, to raise a fact issue as to the equality of responsibility.

responsibilities. No law that this court is aware of holds companies liable for unevenly splitting the work load among co-workers, even co-workers holding the same job title. The difference in responsibility may be due to a number of factors: ability, desire, motivation, drive, the perception of management, etc. Courts cannot, and should not, serve as super-CEOs over corporate decisions as fundamental as the allocation of labor.

■ Second, summary judgment would also be proper on the EPA claim on the ground that Defendant has proffered a non-sex related reason as to why there was a pay differential between Plaintiff and Mr. Hunt. That reason, alluded to earlier, has to do with the fact that Mr. Hunt received better evaluations than did Plaintiff. Defendant is certainly entitled to take such a factor into account in setting compensation levels. Other than relying on her own allegations, Plaintiff has failed to show the court that there exists a genuine issue of material fact that the reason proffered by Defendant is pretextual. Plaintiff can demonstrate that the reason was pretextual in two ways, "either (1) directly by persuading the court that a discriminatory reason more likely motivated the employer, or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Hall v. Gillman, Inc.,* 81 F.3d 35, 37 (5th Cir.1996) (citing *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985)). Plaintiff has not argued before the court that her 4–5 suppliers were the equivalent of Mr. Hunt's 29–30. Nor has Plaintiff brought forth any evidence, other than her allegations, to raise a genuine issue of material fact as to whether she actually performed work requiring equal skill and responsibility to that of Mr. Hunt. (keeping in mind that Mr. Hunt was also responsible for the two projects mentioned earlier). Plaintiff has failed to carry her burden of production to avoid summary judgment.

In summary, the court finds that Plaintiff's EPA claim is barred by the statute of limitations because Plaintiff has failed to show the existence of a genuine issue of material fact on the question of willful conduct. However, even if Plaintiff's claim was not time barred,

the court finds (1) that Plaintiff has failed to establish a prima facie case under the EPA as a matter of law and (2) that even if Plaintiff could have established a prima facie case, the Defendant has proffered a non-sex based reason for the pay differential, which the Plaintiff has failed to refute in terms of her summary judgment burden of proof.

## SEX AND AGE DISCRIMINATION

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA proscribes similar treatment on the basis of age. 29 U.S.C. § 623(a)(1). The same evidentiary procedure for allocating burdens of proof applies to discrimination claims under both statutes. *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 n. 4 (5th Cir.1993); *Fields v. J.C. Penney Co.,* 968 F.2d 533, 556 n. 2 (5th Cir.1992). Initially, the Plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Meinecke,* 66 F.3d at 83; *Bodenheimer,* 5 F.3d at 957. Once that is accomplished, the Defendant must come forth with a legitimate, non-discriminatory reason for its actions. If the Defendant satisfies this burden, the presumption of discriminatory action disappears, and the plaintiff must prove that the proffered reasons are pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Meinecke,* 66 F.3d at 83; *Bodenheimer,* 5 F.3d at 957. The plaintiff retains the ultimate burden of persuasion throughout the case. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. To meet its burden of production, the Defendant must clearly set forth, through the introduction of admissible evidence, "reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.,* 509 U.S. at 506, 113 S.Ct. at 2747, 125 L.Ed.2d at 416

(emphasis in original). To meet its burden of production, the employer need only articulate a lawful, legitimate and nondiscriminatory reason, regardless of what its persuasiveness may or may not be. *Bodenheimer*, 5 F.3d at 958. Defendant has articulated the following reasons for transferring Plaintiff: Plaintiff was the best fit for the Warehouse Clerk II position; moving Plaintiff rather than Mr. Hunt would cause less disruption in the Expediting Department because of the wider responsibilities and larger work load carried by Mr. Hunt; and Mr. Hunt's performance as an Expediter exceeded Plaintiff's.

In order to avoid summary judgment, because Tarango would be required to prove at trial, through a preponderance of the evidence, that Defendant's proffered reasons are a pretext for both age and sex discrimination, Plaintiff would have to produce sufficient evidence to establish that Defendant's reasons were pretexts for both *age* and *sex* discrimination. *Id.* The court would then decide whether Plaintiff's facts, if believed, would prove that, more likely than not, the employer fired the employee because of her age and/or sex. *Id.* at 959 n. 8. This stage of the analysis, however, will not be reached because the court finds that Plaintiff has failed to establish a prima facie case of either sex or age discrimination.

Traditionally, in order to establish a prima facie case of discrimination under Title VII, a Plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged or demoted, and (4) after being discharged, her employer replaced her with a person who was not a member of the protected class. *See Meinecke*, 66 F.3d at 83; *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). The first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case. *Meinecke*, 66 F.3d at 83; *Bodenheimer*, 5 F.3d at 957. The fourth element of an ADEA claim is similar, although it is worded somewhat differently: The Plaintiff must show that "[s]he was either (i) replaced by someone outside the protected class, (ii) replaced by

someone younger, or (iii) was otherwise discharged because of [her] age." *Id.*

Because Plaintiff's transfer occurred during a downsizing, the court treats this case as one involving a reduction-in-force (RIF). *See, e.g., Meinecke v. H & R Block of Houston*, 66 F.3d 77 (5th Cir.1995). The elements of a prima facie case in a RIF situation are somewhat modified from the traditional elements listed above. In a RIF case, a *prima facie* case is established by evidence that (1) the Plaintiff is within the protected group under the ADEA or Title VII; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position at the time of the discharge or demotion; and (4) evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir.1996); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir.1993); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 642 (5th Cir.1985). Since the court finds that Plaintiff did not suffer an adverse employment action as a matter of law, and therefore cannot establish a prima facie case under either the ADEA or Title VII, summary judgment for Defendant on these two claims is proper.

Tarango was laterally transferred from Expediter to Warehouse Clerk II, retaining her same pay and benefits. She characterizes this move as a demotion because of the lower salary cap for the Warehouse Clerk II position than for the Expediter position. Plaintiff also terms her transfer an adverse employment action because she felt "humiliated." In *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 135 n. 1 (7th Cir. 1993), the Seventh Circuit noted that "[t]he clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'" (citing *Darnell v. Campbell Cty. Fiscal Ct.*, 731 F.Supp. 1309, 1313 (E.D.Ky. 1990), *aff'd*, 924 F.2d 1057 (table) (6th Cir. 1991)). With this the court is in agreement.

The fact that Plaintiff felt humiliated (she could not explain why she felt that way during her deposition) is not enough to raise Defendant's action to the level of constructive discharge. In addition, the fact that the pay level designation changed from F to E does not establish an adverse employment action. As noted earlier, the letters are used primarily as a tracking device and in no way was Plaintiff impeded from receiving raises (which took her above the class maximum) or from being promoted to a higher level, as is clearly demonstrated by Plaintiff's promotion to the position of Associate Buyer.

Plaintiff claims that she received smaller incremental raises after her transfer, and that that alone establishes the existence of an adverse employment action. A review of the record before the court does show that after Plaintiff was transferred, her annual merit increases did not exceed three percent. Her merit increases before the transfer ranged from 3.12% to 11.60%. It is important to note, however, that the increments of the merit increases were not tied to the various salary levels. In other words, a person at pay level F did not necessarily receive a greater raise, percentage wise, than a person at pay level E. This fact is clearly illustrated by the incremental raises received by Plaintiff herself at the different levels. The amount of the merit raises was driven primarily by factors other than pay level. Plaintiff's contention that she received lower raises because of her transfer is pure speculation and conjecture, and certainly does not establish an adverse employment action amounting to constructive discharge. Indeed, it is exceedingly difficult to conclude that a constructive discharge has taken place here when Plaintiff continues to work for Defendant four years later after receiving additional promotions and pay raises.

## RETALIATION

Plaintiff finally alleges that she was retaliated against for filing an EEOC complaint. Her retaliation claim consists of (1) not being interviewed for the Senior Buyer position and (2) being promoted to an Associate Buyer position on a temporary basis only. A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996) (citing *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983)). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). The opposition clause of § 2000e–3(a) requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful. *Long,* 88 F.3d at 304; *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.1981). For purposes of disposing of this issue, the court will assume that Plaintiff engaged in an activity protected by Title VII, the filing of a complaint with the EEOC alleging perceived sex and age discrimination.

The same burden-shifting structure applicable to Title VII and ADEA cases applies to unlawful retaliation cases. *Long,* 88 F.3d at 304; *McMillan,* 710 F.2d at 1116. The court need not undertake the entire burden-shifting analysis, however, because Plaintiff cannot establish a prima facie case of retaliation. Plaintiff cannot show that she suffered an adverse employment action. Plaintiff first complains that she was not interviewed for the Senior Buyer position nor notified of that position's disposition. Defendant's Director of Human Resources, Mr. Breitegan, affied that Plaintiff was not even minimally qualified for the Senior Buyer position. Plaintiff has not alleged that she was. A company is certainly permitted to screen applicants for any opening advertised and to interview only those minimally qualified. The Defendant did not have an obligation to interview an unqualified applicant and had absolutely no obligation to specially notify Plaintiff of who finally got the job. The court fails to see how this is retaliatory action on the part of the company.

Plaintiff also claims that her temporary promotion to the position of Associate Buyer is an act of retaliation. Plaintiff was originally promoted to that position pending the return of an employee on maternity leave. However, according to Mr. Breitegan's deposition, that employee will not be returning and Plaintiff has now been made permanent in that position. Again, Plaintiff persists in an argument that is not only unsupported by the record, but is also conclusively negated by the record. Thus, Plaintiff's claim of retaliation on this point is moot and will likewise be dismissed. Therefore,

It is ORDERED that Defendant's Motion for Summary Judgment be GRANTED as to all claims.

### FINAL JUDGMENT

On the 19th day of December, 1996, the Court entered an Order Granting Defendant's Motion for Summary Judgment. The court now enters its Final Judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is ORDERED that Defendant's Motion for Summary Judgment be GRANTED.

It is ORDERED that all of Plaintiff's claims be DISMISSED WITH PREJUDICE.

It is ORDERED that the parties bear their own cost of litigation.

It is ORDERED that all pending motions be DENIED as Moot.