# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2012

Lyle W. Cayce
Clerk

No. 11-30744

---

MALCOLM ARMSTRONG

Plaintiff-Appellant,

versus

K & B LOUISIANA CORPORATION, Doing Business as Rite Aid;
RITE AID HEADQUARTERS CORPORATION

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:10-CV-1647

---

Before KING, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Malcolm Armstrong appeals a summary judgment in favor of his former

employer, K&B Louisiana Corporation and Rite Aid Headquarters Corporation

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30744

(jointly, "Rite Aid") on Armstrong's claim that Rite Aid fired him in retaliation for complaints about racial harassment, in violation of Title VII of the Civil Rights Act of 1964. We affirm.

I.

Armstrong, who is black, worked for Rite Aid for several years, first as a Pharmacy Manager and then as a Pharmacy District Manager. At a meeting with Richard Ellison, a human resources manager, in May 2008, Armstrong said that some pharmacists working below him did not want to work for a black supervisor. Armstrong alleges that he made similar remarks to Ellison and others on multiple occasions between June 2008 and April 2009, complaining of racism among four pharmacists.

In April 2009, Armstrong was disciplined for paying a pharmacist for drive time and mileage to drive to her home store, in violation of company policy. Armstrong received a final, written warning that future action could involve further discipline, including termination. The next month, Armstrong's supervisor, Regional Vice President Tammy Rogers, received a complaint from a salaried staff pharmacist that Armstrong told her she would not be paid for all the time she had worked in another store. An investigation revealed that Armstrong in fact had told two pharmacists he would not pay them for all the hours they had worked and that he had twice logged on to Rite Aid's timekeeping system and intentionally decreased the hours worked by those two employees, thus decreasing the amount each was paid. During the investigation, Armstrong did not admit to altering the employees' hours intentionally.

Armstrong has since admitted to altering the two employees' hours. He now claims that he told them they would not be paid for their time working on inventory and that they did not obtain pre-approval for the excess time. Rite Aid's policy is that a salaried pharmacy manager will not be paid for hours

related solely to the preparation of physical inventory. It has no policy that a pharmacy manager will not be paid for hours worked during a controlled drug inventory or that a salaried staff pharmacist will not be paid for hours worked doing any type of inventory.

Based on the results of the investigation, including the evidence that Armstrong had altered the timekeeping system records to deny the two employees pay for hours they had worked, Rogers and the human resources department decided to terminate Armstrong's employment effective June 12, 2009.

Armstrong sued in response, asserting claims for retaliatory discharge, racial harassment, and retaliatory harassment. Armstrong abandoned his two harassment claims, and the district court granted summary judgment in favor of Rite Aid after finding that Armstrong had failed to establish a genuine issue of material fact as to whether Rite Aid's proffered reasons for Armstrong's dismissal were false or pretextual.

## II.

We review a summary judgment *de novo*. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). "Summary judgment is appropriate when the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (internal quotation marks omitted); *see* FED. R. CIV. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). To defeat a properly pleaded motion for summary judgment, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Celotex Corp. v. Catrett*, 477

No. 11-30744

U.S. 317, 325 (1986)).  The court must resolve factual controversies in favor of the nonmoving party, *see id.*, but the nonmoving party cannot satisfy its burden merely by establishing "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), by conclusional allegations in affidavits, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), or "by only a scintilla of evidence," *Little*, 37 F.3d at 1075 (internal quotation marks omitted).

## III.

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies to Title VII unlawful retaliation cases.  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he participated in an activity protected by Title VII, (2) he suffered an adverse employment action, and (3) there is a causal relationship between the protected activity and the adverse employment action.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to provide a legitimate, non-retaliatory reason for its action.  *Long*, 88 F.3d at 304-05.  If the defendant does so, the plaintiff must show that the defendant's proffered reason was merely a pretext for unlawful retaliation.  *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

In Title VII retaliation claims, protected activities include (1) opposing any practice deemed an unlawful employment practice (the "opposition clause") or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the "participation clause"). *Douglas v. DynMcDermott Petrol. Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).  Armstrong's *prima facie* case rests exclusively on the opposition clause,

4

No. 11-30744

because he did not participate in any investigation or proceeding relevant here. For his actions to satisfy the opposition clause, Armstrong must have had an objectively reasonable belief that Rite Aid was engaged in employment practices barred by Title VII. *See Byers*, 209 F.3d at 428.

Viewed in the most favorable light possible, Armstrong's *prima facie* case fails for lack of any objectively reasonable belief that Rite Aid was violating Title VII. He adduces no objective evidence that any pharmacists under his management disdained working for a black supervisor so strongly as to require Rite Aid to remedy the situation. By Armstrong's admission, none of the complained-of pharmacists ever said anything racist to him or told him that that pharmacist did not want to work for him. The regional vice-president who ultimately fired him, Armstrong admits, was not a racist and did not tolerate racism among the pharmacists. Armstrong details pharmacist Tom Myers's personal animosity toward him but fails to identify any racial element, other than the bare assertion that the animosity began at first sight, when Myers presumably first noticed Armstrong's race.

With no objective evidence of his subordinates' racial animus, Armstrong offers only conclusional allegations to support his *prima facie* case. Therefore, the summary judgment is AFFIRMED.

5