Wilbur J. BABIN, Jr., also known as
Bill Babin, Trustee for the Bankrupt-
cy Estate of Pinky Sparks, Plaintiff–
Appellant

v.

NATIONAL VISION, INCORPORATED,
doing business as America's Best Con-
tacts and Eyeglasses, Defendant–Ap-
pellee.

No. 12–30279.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 2012.

James Louis Arruebarrena, Esq., New
Orleans, LA, for Plaintiff-Appellant.

Amelia Williams Koch, Kathlyn Gloria
Perez, Esq., Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C., New Orleans,
LA, for Defendant-Appellee.

Before JOLLY, PRADO, and
HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge: *

Plaintiff–Appellant Wilbur Babin, as
Trustee of the Bankruptcy Estate of Pinky

_____

* Pursuant to 5TH CIR. R. 47.5, the court has
determined that this opinion should not be
published and is not precedent except under

Sparks, sued Sparks's former employer for retaliatory discharge under Title VII of the Civil Rights Act of 1964. The district court granted summary judgment on behalf of the employer, Defendant–Appellee National Vision, Inc. We AFFIRM.

## I.

In 1996, Pinky Sparks ("Sparks"), an African–American female, began work as a front desk clerk at a National Vision eyeglass retail outlet in Slidell, Louisiana. By all accounts, Sparks was an able saleswoman: her manager complimented her on her sales skills, she was promoted three times, and twice to separate Assistant Manager positions within the store. With her promotions, however, came increased responsibility in the management of store operations and supervision of other staff members. With these new responsibilities, Sparks struggled.

Throughout her employment, Sparks reported to the store's General Manager—at first Mike Nguyen ("Nguyen"), an Asian–American, and Angela Miller ("Miller"), an African–American and, later, Ben Ramsey ("Ramsey"), a Caucasian. All three General Managers filed written performance documentation that indicated Sparks was failing considerably at her employment duties. The record indicates at least seven such disciplinary "write-ups": one by Nguyen, five by Miller, and (of relevance here) only one by Ramsey. After each write-up, Sparks was given an opportunity to remedy what her managers perceived to be deficiencies in her on-the-job performance. For example, after each "Action Plan," she was given thirty days to improve.

The present dispute stems from National Vision's 2008 hiring of Ramsey as the Slidell store's General Manager. According to Sparks, Ramsey immediately declared himself a "redneck" and the "new sheriff in town" upon beginning the new position. Thereafter, Mr. Ramsey allegedly continued to refer to himself as a redneck, which made Ms. Sparks uncomfortable because she believed the term to have a racist connotation. On March 17, 2008, Ramsey reportedly pulled Monica McKevitt ("McKevitt"), Sparks's Caucasian co-worker, aside and told her, "[T]his is going to be an all white man's store," that there were "too many black people in [the store]," and that "these niggers need to get out of here." When McKevitt asked if Ramsey was referring to Sparks, Ramsey said, "[Sparks] has been here ... too long."

Sparks claims that, after the alleged Ramsey–McKevitt incident, she called District Manager Tina Wicker ("Wicker") and handed the phone to McKevitt to speak to Wicker about the conversation with Ramsey. Sparks also claims to have suggested immediately that McKevitt file an internal complaint against Ramsey with National Vision. However, Sparks testified that she does not know what McKevitt told Wicker and does not know if McKevitt actually reported her complaint. Nevertheless, Wicker did send a memo to all stores in her district reminding management personnel of National Vision's anti-harassment policy.

Soon after, Sparks filed a complaint of discrimination and harassment against Ramsey with the Human Resources Department ("HR"), and HR launched an investigation, which revealed that Ramsey referred to himself as a "redneck" and resulted in Ramsey being transferred to another store. Miller then returned to the store as Ramsey's replacement, apparently unaware of Sparks's involvement in the Ramsey–McKevitt incident. Meanwhile,

the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Sparks continued to receive poor job performance evaluations. She alleges the Action Plans that were issued after Ramsey's relocation were designed by National Vision for her to fail and that her colleagues at the Slidell store sabotaged her efforts to ameliorate her performance. At one point, Wicker allegedly chided her for not "having Ramsey's back."

In May 2008, Sparks filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation based on Ramsey's conduct and the conduct of National Vision's management following Sparks's participation in McKevitt's race discrimination complaint. McKevitt filed a similar EEOC charge on the same day. Roughly three months later, Sparks was officially terminated by Wicker on August 22, 2008. Sparks alleges the reasons for her termination were her involvement in McKevitt's complaint and the filing of her own. National Vision contends the termination was due to Sparks's perpetual failure to carry out her job as required.

On August 3, 2010, Sparks filed her complaint against National Vision under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq.*, alleging sex and race discrimination and retaliation.[1] Sparks subsequently dropped all discrimination claims. We are called upon to decide today a single question: whether summary judgment on behalf of National Vision on the retaliation claim was proper.

## II.

We review the district court's grant of summary judgment *de novo. Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 635 (5th Cir.2002). Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), (c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When assessing whether a dispute as to any material fact exists, we consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, a nonmovant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Instead, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir.2010) (inset quotation marks omitted).

## III.

We find that the district court did not err in granting summary judgment on behalf of National Vision. Even if Sparks established a *prima facie* case of retaliation under Title VII, she must respond to National Vision's alleged non-retaliatory reason for her termination and show that the retaliation was a "but for" cause of the

---

1. On September 20, 2010, an Amended Complaint was filed that substituted Wilbur J. "Bill" Babin, Jr. as Plaintiff for the originally named Plaintiff Sparks. Babin is the Trustee of Sparks's Bankruptcy Estate.

adverse employment decision. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir.1996) (quoting *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985)). She has not demonstrated that "but for" her complaint against Ramsey, she would not have been fired. The record indicates that the disciplinary "write-ups" criticizing Sparks's inability to perform her job as required began before Ramsey became manager at the store. They continued after he had been relocated. Sparks alleges that Miller's write-ups were fraudulent and that the "improvement plans" were designed for Sparks to fail. However, she never provides any evidence that the documents contain false characterizations of her on-the-job performance, and her conclusory assertions, are not enough to survive summary judgment. *Duffie*, 600 F.3d at 371. The record also provides no support for her claim that National Vision was trying to "protect" Ramsey. Rather, it suggests that National Vision promptly dealt with complaints about Ramsey's offensive comments. An internal investigation was launched, a memo was sent out to all area stores detailing the company's anti-harassment policy, and Ramsey was reprimanded, given a Performance Improvement Plan, and relocated.

Because we find that Sparks has not provided any evidence rebutting National Vision's non-retaliatory reason for terminating her employment, the district court's summary judgment on behalf of National Vision was proper.

The judgment of the district court is

AFFIRMED.