**Fayette LONG; Jeanell Reavis, Plaintiffs–Appellants,**

v.

**EASTFIELD COLLEGE, Defendant–Appellee.**

No. 95–10526.

United States Court of Appeals, Fifth Circuit.

July 1, 1996.

Rehearing Denied Aug. 15, 1996.

---

Richard Joseph Deaguero, Dallas, TX, for Plaintiffs–Appellants.

Dennis L. Roossien, Jr., Strasburger & Price, Dallas, TX, for Defendant–Appellee.

Before GARWOOD, EMILIO M. GARZA and DEMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs Fayette Long and Jeanell Reavis appeal the district court's order granting Defendant Eastfield College's motions for summary judgment. We affirm in part, reverse in part, and remand.

## I

Plaintiff Reavis was employed by Eastfield College as an assistant in the Human Resources Office. Reavis misplaced a file room key belonging to her immediate supervisor, Kathy Sawa. Reavis had previously complained to college officials about the racially discriminatory conduct of the Director of the Human Resources Office, Kate Kelley.[1] Because Reavis feared that Kelley would yell at

---

**1.** Reavis, a woman of Hispanic heritage, asserts that Kelley, an African–American woman, repeatedly subjected her to racial slurs, forced her to perform demeaning tasks, berated her because she did not speak Spanish, and thwarted her attempts to file harassment complaints against co-workers.

her if she learned about the lost key, Reavis told Sawa that the key was in her other purse. Reavis then contacted Plaintiff Long about obtaining a duplicate key.

Long was employed by Eastfield College as a secretary in the Facility Services Division. Long had previously complained to college officials about the sexually discriminatory conduct of her immediate supervisor, George Clark.[2] Upon receiving Reavis's request for a duplicate key, Long, without Clark's knowledge, obtained the key codes necessary for Lenny King, an employee in the Building Maintenance Division, to cut the key. King cut the duplicate key and gave it to Long, who took it to Reavis, who then gave it to Sawa. Reavis told Sawa that she had found the key in her purse. The next day, Clark, upon information from King and King's immediate supervisor, Tommy Gallegos, learned about the duplicate key. Clark submitted a written report of the incident to Eastfield College President Dr. Robert Aguero, recommending Long's termination. Kelley submitted a similar report to Aguero, recommending Reavis's termination. After reviewing these reports and written statements from Long, Reavis, Sawa, King, and Gallegos, Aguero terminated Long and Reavis. Long and Reavis filed suit against Eastfield College. Long asserted Title VII claims for gender discrimination, based on theories of unlawful retaliation and hostile work environment. Reavis asserted Title VII claims for gender discrimination and national origin discrimination, also based on theories of retaliatory discharge and hostile work environment.[3] Upon the motions of Eastfield College, the district court granted summary judgment dismissing Long and Reavis's Title VII claims. Long and Reavis filed timely notices of appeal.

## II

█ We review a district court's grant of summary judgment de novo. *Armstrong*

*v. City of Dallas,* 997 F.2d 62, 65 (5th Cir. 1993). Summary judgment is appropriate in cases in which there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). In an employment discrimination case, we focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Armstrong,* 997 F.2d at 65–66.

## A

█ Long and Reavis first assert that the district court erred in granting summary judgment in favor of Eastfield College on their Title VII claims for unlawful retaliation. A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983). An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). The opposition clause of § 2000e–3(a) requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful. *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.1981).

█ We have previously held that the burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), is also applicable to Title VII unlawful retaliation cases. *McMillan,* 710 F.2d at 1116. Therefore, once the plain-

---

**2.** Long asserts that Clark told an offensive joke, involving condoms, in her presence. Long further asserts that after she voiced her disapproval, Clark became increasingly hostile towards her, belittling her in the presence of co-workers, downgrading her performance rating, and thwarting her efforts to file criminal charges against co-worker Tommy Gallegos.

**3.** Both Long and Reavis filed other federal and state law claims which are not relevant to the instant appeal.

tiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff. *Id.*[4]

### 1

█ We must first determine whether Long and Reavis have established prima facie cases for unlawful retaliation. The summary judgment evidence establishes that Long complained to college officials about a sexually explicit joke told by Clark in Long's presence. Long's affidavit asserts that, after learning of Long's complaint, Clark required Long to provide a report that he had never required previously. Long also testifies that Clark belittled her in front of male co-workers and interfered with her attempt to file criminal charges with campus police against a male co-worker. In response to these incidents, Long again complained to college officials, alleging that Clark's actions created a hostile work environment and that Clark treated her differently from other employees because of her gender. After Clark learned about this complaint, he downgraded Long's performance rating from "exceeds" to "satisfactory." Long complained to college offi-

cials a third time, alleging that Clark downgraded her performance rating in retaliation for her complaints. Viewing this evidence in the light most favorable to Long, we find that Long has presented sufficient evidence to create a fact issue as to her "reasonable belief" that Clark's conduct violated Title VII.

█ The summary judgment evidence also establishes that Reavis repeatedly complained to college officials about Kelley, alleging that Kelley's actions created a hostile work environment and that Kelley treated her differently because of her Hispanic heritage. Reavis's affidavit asserts that Kelley constantly subjected her to racial slurs; Reavis testifies that Kelley berated her because she did not speak Spanish, brought her a book on how to speak Spanish, and forced her to communicate with Kelley in Spanish in person and through electronic mail. Reavis's affidavit also claims that Kelley told her that she intended to retaliate against Reavis for filing complaints, and that on one occasion thereafter Kelley threatened to discharge her unless Reavis climbed into a dumpster to look for certain papers. Viewing this evidence in the light most favorable to Reavis, we find that Reavis has presented sufficient evidence to create a fact issue as to her "reasonable belief" that Kelley's conduct violated Title VII.

---

**4.** At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly.

The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985). In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct. *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984).

The standard for establishing the "causal link" element of the plaintiff's prima facie case is much less stringent. *See McMillan*, 710 F.2d at 1116–17 (holding plaintiff's evidence sufficient to meet causation element of prima facie case but insufficient to prove ultimate question of "but for" causation). The Eleventh Circuit has recognized this distinction explicitly, holding that a plaintiff may satisfy the "causal link" element of his prima facie case by showing that the protected activity and the adverse employment action "were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1995). Though we need not today adopt the Eleventh Circuit's approach, we do note that a plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the "causal link" element of a prima facie case. *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 857 n. 12 (5th Cir.1982).

Accordingly, we find that both Long and Reavis have established that they engaged in activity protected by Title VII.[5] Long and Reavis were subsequently terminated by Eastfield College; thus they have established the occurrence of an adverse employment action. We must now determine, with respect to both Long and Reavis, whether a causal link exists between their protected activities and their terminations. Long alleges that Clark, her supervisor, retaliated against her by recommending her termination. Reavis alleges that Kelley, her supervisor, retaliated against her by recommending her termination. The summary judgment evidence establishes that Long and Reavis filed complaints against Clark and Kelley, that Clark and Kelley had knowledge of these complaints, and that Clark and Kelley recommended that Long and Reavis be terminated after learning of these complaints. Accordingly, we have no trouble finding sufficient evidence, for prima facie case purposes, to establish a causal link between Long and Reavis's protected activities and Clark and Kelley's recommendations.[6] However, neither Long nor Kelley alleges that Aguero, the President of Eastfield College, who made the final termination decisions, intended to retaliate or discriminate against them in any way. We must thus determine whether Aguero's actions severed the causal link between the allegedly retaliatory recommendations of Clark and Kelley and the final terminations of Long and Reavis. This inquiry involves the overlap of issues of causation and agency.

Employers are liable under Title VII, in accordance with common law agency principles, for the acts of employees committed in the furtherance of the employer's business. *Moham v. Steego Corp.*, 3 F.3d 873, 876 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). However, we do not hold employers liable under Title VII for every discriminatory act

committed by employees in the workplace. As observed by the Seventh Circuit, the "in furtherance of the employer's business" aspect of the doctrine of respondeat superior suggests that liability requires a direct relationship between the allegedly discriminatory conduct and the employer's business. *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990). In accordance with this observation, two distinct lines of case law have developed addressing employer liability for wrongful termination decisions based on the complaints or recommendations of other employees.

The first line of cases involves employer liability for the actions, complaints, and recommendations of ordinary employees. We have previously held an employer not liable under Title VII for an employment decision based on the false complaint of an ordinary employee, where the employer reasonably believed the allegation and acted on it in good faith. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993). Because ordinary employees do not have control over the employment status of co-employees, one employee's recommendation that another employee be terminated will normally be so unrelated to the employer's business that it cannot be deemed "in furtherance" thereof. *See Shager*, 913 F.2d at 405 ("If one low-level employee makes sexual advances to another, his conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior."). In such cases, any wrongful intent on the part of the ordinary employee is not properly imputable to the employer.

The second line of cases involves employer liability for the actions, complaints, and recommendations of supervisory employees. We have previously held an employer liable under Title VII for an employment decision made by supervisory employees, where the supervisory employees were agents of the

---

5. *See, e.g., Hochstadt v. Worcester Found. for Experimental Biology, Inc.*, 425 F.Supp. 318, 324 (D.C.Mass.) (noting that "'opposed any practice made an unlawful employment practice' is broad enough to include ... using the employer's internal grievance mechanisms"), *aff'd*, 545 F.2d 222 (1st Cir.1976).

6. *See supra* note 4 (discussing the difference between the causal link element of the prima facie case and the ultimate question of "but for" causation).

employer with regard to the employment status of the plaintiff. *Flanagan v. A.E. Henry Community Health Servs. Ctr.*, 876 F.2d 1231, 1234–35 (5th Cir.1989). Because supervisory employees often have the authority to make the decisions to discipline, hire, and fire subordinate employees, a supervisory employee's decision to terminate will often be made in furtherance of the employer's business. *See Shager*, 913 F.2d at 405 ("[A] supervisory employee who fires a subordinate is doing the kind of thing that he is authorized to do, and the wrongful intent with which he does it does not carry his behavior so far beyond the orbit of his responsibilities as to excuse the employer."). In such cases, the wrongful intent on the part of the supervisory employee is properly imputable to the employer.

■■■■■■ The Title VII claims for unlawful retaliation filed by Long and Reavis against Eastfield College do not fit neatly into either of these lines of analysis. The summary judgment evidence establishes that Aguero, as President of Eastfield College, had the final authority to hire and fire employees. Clark and Kelley, as supervisors in their respective departments, had the authority to make recommendations concerning the employment status of their subordinate employees. In this case, Clark recommended that Long be terminated, and Kelley recommended that Reavis be terminated. Aguero then made the final decisions to terminate Long and Reavis. If Aguero based his decisions on his own independent investigation, the causal link between Clark and Kelley's

allegedly retaliatory intent and Long and Reavis's terminations would be broken. *See Shager*, 913 F.2d at 405 ("Lehnst did not fire Shager; the Career Path Committee did. If it did so for reasons untainted by any prejudice of Lehnst's against older workers, the causal link between that prejudice and Shager's discharge is severed...."). If, on the other hand, Aguero did not conduct his own independent investigation, and instead merely "rubber stamped" the recommendations of Clark and Kelley, the causal link between Long and Reavis's protected activities and their subsequent terminations would remain intact.[7] *See id.* ("If [the committee] acted as the conduit of Lehnst's prejudice—his cat's paw—the innocence of its members would not spare the company from liability."). The degree to which Aguero's decisions were based on his own independent investigation is a question of fact which has yet to be resolved at the district court level.[8] Viewing the evidence in the light most favorable to Long and Reavis, we must assume on appeal that Aguero merely "rubber stamped" the recommendations of Clark and Kelley. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("[In ruling on summary judgment motions, t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Accordingly, for the purposes of this appeal, we find that Long and Reavis have presented sufficient evidence to establish a causal link between their protected activities and their

---

7. In explaining its rationale for granting summary judgment on Long and Reavis's retaliatory discharge claims, the district court did not consider this possibility, focusing solely on Aguero's lack of retaliatory intent:

    Plaintiffs' summary judgment response does not dispute any of the factual testimony set forth by Dr. Aguero or challenge his reasons for terminating them. Plaintiffs' response demonstrates a fundamental misunderstanding of their summary judgment burden. Plaintiffs failed to identify any facts to challenge Dr. Aguero's articulated reasons for terminating their employment....

8. Different factual findings on this question could be supported by evidence in the summary judgment record. In addition to the recommendations of Clark and Kelley, Aguero reviewed written statements from Long, Reavis, King,

Gallegos, and Sawa. This evidence tends to support a finding that Aguero conducted an independent investigation and independently decided to terminate Long and Reavis. However, these written statements were both prepared at the direction of Clark and Kelley and presented to Aguero by Clark and Kelley. This evidence tends to support a finding that Aguero's decision to terminate Long and Reavis was not independently made. Aguero's termination letters to Long and Reavis also tend to indicate that Aguero served only to "rubber stamp" Clark and Kelley's recommendations, explaining the reasons for the discharges only by stating, "This is to inform you that I have made a decision to uphold the recommendation of your supervisor to terminate your employment with Eastfield College. A copy of the supervisor's letter is attached."

terminations, and we hold that Long and Reavis have presented prima facie cases for unlawful retaliation.

**2**

■ The burden of production now shifts to Eastfield College to articulate a legitimate, non-retaliatory reason for terminating Long and Reavis. Clark's letter to Aguero, included in the summary judgment record, recommends that Long be terminated because she violated key replacement procedures, because she did not inform Clark about the lost key request, and because of past "performance-related problems." Kelley's letter to Aguero, also included in the summary judgment record, recommends that Reavis be terminated because she violated key replacement procedures and because she failed to admit that the key was a replacement key when questioned by Kelley and Sawa. We find that these reasons, if believed, would permit the trier of fact to conclude that the terminations were non-retaliatory. Because Eastfield College has satisfied its burden to articulate a legitimate, non-retaliatory reason for Long and Reavis's terminations, the burden-shifting framework of *McDonnell Douglas* drops from the case. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("If ... the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.").

**3**

■ We are now left with the ultimate question—whether Eastfield College unlawfully retaliated against Long and Reavis. As we noted earlier, a plaintiff must show that the adverse employment action would not have occurred "but for" the protected activity in order to prove unlawful retaliation. *McMillan*, 710 F.2d at 1116. To defeat a motion for summary judgment or a motion for judgment as a matter of law, a Title VII plaintiff, like plaintiffs in any other civil case, must show that there is a " 'conflict in substantial evidence' " on this ultimate issue. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc) (quoting *Boeing*

*Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc)). Evidence is "substantial" if it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co.*, 411 F.2d at 374. We must thus determine whether reasonable and fair-minded persons could conclude from the summary judgment evidence that Eastfield College would not have terminated Long and Reavis "but for" their activities protected by Title VII.

■ Long and Reavis, in response to Eastfield College's proffered reasons for their terminations, present evidence, through affidavit and deposition testimony, that the key replacement procedure for Eastfield College varies according to the situation. Evidence in the summary judgment record suggests that the Human Resources Office in particular does not follow key replacement procedure, as illustrated by the incomplete and inaccurate key records on file for both Kelley and Sawa. Further, Long and Reavis both testify that no Eastfield College employee had previously been terminated for violation of key replacement procedure. Long, with regard to the other reason given for her termination, presents undisputed testimony that her past performance evaluations never fell below "exceeds" until after her complaint to college officials about Clark, when her performance was downgraded to "satisfactory." With regard to the other reason given for Reavis's termination, Reavis testifies that Sawa did not ask her whether the key was a replacement key and that she responded truthfully to all of the questions that Kelley and Sawa asked her. Viewing the summary judgment evidence in the light most favorable to Long and Reavis, we find that reasonable and fair-minded persons could conclude that the reasons proffered by Eastfield College were pretexts for unlawful retaliation, and thus that Long and Reavis would not have been terminated "but for" their previous complaints against Clark and Kelley. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42–43 (5th Cir.1992) (affirming district court judgment for plaintiff on Title VII retaliation claim where plaintiff's performance evaluations were excellent prior to

EEOC complaint, and where plaintiff testified that her supervisor became increasingly abusive after EEOC complaint). Accordingly, we hold that a genuine issue of material fact remains as to whether Eastfield College unlawfully retaliated against Long and Reavis by terminating their employment. The district court erred in granting Eastfield College's motions for summary judgment on Long and Reavis's claims for unlawful retaliation.

## B

■■■ Long next asserts that the district court erred by granting Eastfield College's motion for summary judgment on her hostile work environment claim.[9] To state a claim for relief under Title VII for gender discrimination based on a theory of hostile work environment, a plaintiff must prove (1) that she belongs to a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 403 (5th Cir. 1993). In order to be actionable, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.* at ——, 114 S.Ct. at 371.

■■■ Long's sole basis for her hostile work environment claim is an offensive joke concerning condoms which Clark told in her presence. The Supreme Court has previously contrasted physically threatening or humiliating conduct, which will support a claim for hostile work environment, from a "mere offensive utterance," which will not. *Id.* We find that the alleged joke in this case is exactly the type of mere offensive utterance which should not, by itself, support a claim for hostile work environment. *See DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 595 (5th Cir.) (finding ten offensive articles in a police newspaper insufficient to support a hostile work environment claim), *cert. denied,* —— U.S. ——, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995). Accordingly, we hold that the district court did not err in granting summary judgment for Eastfield College on Long's Title VII hostile work environment claim.[10]

## III

Based on the foregoing, we AFFIRM the district court's order insofar as the district court grants summary judgment for Eastfield College on Long and Reavis's Title VII hostile work environment claims. We REVERSE the district court's order insofar as the district court grants summary judgment for Eastfield College on Long and Reavis's Title VII unlawful retaliation claims. We REMAND to the district court for further proceedings consistent with this opinion.

---

9. Reavis's brief seeks reversal of the district court's grant of summary judgment on her "Title VII reprisal and national origin discrimination claims." Her brief only addresses her claim for unlawful retaliation. Because she does not argue her hostile work environment claim in her brief, she has waived that claim on appeal. *United States v. Maldonado,* 42 F.3d 906, 910 n. 7 (5th Cir.1995).

10. Our finding that Clark's condom joke will not, by itself, support a Title VII hostile work environment claim is not inconsistent with our earlier finding that Long *reasonably believed* that Clark's conduct violated Title VII when she filed her

complaints with college officials. *See supra* Part II.A.1. In *Payne v. McLemore's Wholesale & Retail Stores,* we explicitly rejected the position that proof of an actual unlawful employment practice is necessary to state a claim for unlawful retaliation. 654 F.2d at 1137–41. Further, the scope of conduct relevant to our finding of Long's "reasonable belief" is much broader than Clark's condom joke. In addition to the condom joke, Long complained to college officials that Clark treated her differently based on her gender and that Clark retaliated against her by downgrading her performance rating after he learned of her complaints.

DeMOSS, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II.B. of the panel opinion wherein in the majority affirms the district court's grant of summary judgment in favor of Eastfield College on the hostile work environment claims of both Long and Reavis. I respectfully dissent, however, from Part II.A. of the panel opinion which reverses the grant of summary judgment by the district court in favor of Eastfield College on the "unlawful retaliation" claims of Long and Reavis.

I write to express my utter amazement at the conundrum which the panel opinion creates: On the one hand, the panel concludes (I think correctly) that no reasonable jury could conclude that the facts and circumstances alleged by Long and Reavis could constitute a hostile work environment based on sex or race. But on the other hand, the panel concludes (I think incorrectly) that the same reasonable jury could conclude that Long and Reavis had a "reasonable belief" that the alleged actions constituted discrimination based on race or sex sufficient to support a retaliation claim against their employer.

There is nothing in the text of 42 U.S.C. § 2000e–3(a) which could possibly suggest that the subjective "reasonable belief" of an employee can suffice as the basis for that employee's opposition or protest as to an unlawful employment practice. The statutory text is clear and unambiguous: "because he has opposed any practice made an unlawful employment practice by this chapter." The statute says "made." It does not say "because he has opposed any practice which *he reasonably thinks or believes is* an unlawful employment practice." This is one of those classic cases where the courts (including regrettably our own Fifth Circuit) have, in my view, read into a statutory provision a circumstance that is not there in the language of the statute itself.

Furthermore, I have great difficulty in seeing that the "opposition" clause of § 2000e–3(a) was intended to give the employee victim another ground of recovery. Obviously, the employee who thinks he is the victim of racial or sexual discrimination would quite normally have a feeling of "opposition" to the practices that he feels are discriminatory. Rather, I would say the "opposition" clause is intended to protect third party employees who are not themselves the victim of the "unlawful employment practice" but who "oppose" that practice by speaking out against it or writing reports against it or by orally reporting to a superior the circumstances constituting an "unlawful employment practice." The opposition clause is in effect a form of "whistle blower" relief.

Finally, if we are going to work with the "reasonable belief" element, we should make clear that the test is not whether Long and Reavis subjectively entertained a reasonable belief, but rather whether the average person similarly situated in the circumstances asserted by Long and Reavis would reasonably believe that an unlawful employment practice existed. Given (1) the limited nature of the references to race or sex in this case; (2) the infrequency in time of the incidents in this case; (3) the lack of specificity in the claims of Long and Reavis; (4) the period of time which elapsed between the events which Long and Reavis asserted to be unlawful and the registering of their complaints and between the registering of their complaints and their final termination; and (5) that the summary judgment evidence showed that the decision to terminate them was made by Dr. Aguero and there is nothing in that summary judgment evidence to indicate that Dr. Aguero was aware of any of the alleged complaints by Long and Reavis of hostile environment based on race or sex, I would hold that no rational juror could conclude that a reasonable employee in the same circumstances could reasonably believe that they were discharged for opposing unlawful employment practice. I would affirm the district court's grant of summary judgment in favor of Eastfield College on the retaliation claims.