# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 5, 2008

Charles R. Fulbruge III
Clerk

No. 07-30522

KENNETH M. FALLON

Plaintiff-Appellant

v.

JOHN E. POTTER, POSTMASTER GENERAL

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
No. 07-30522

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Kenneth Fallon filed suit under Title VII against the Postmaster General alleging that Fallon's supervisor, Donald Augustus, retaliated and created a retaliatory hostile work environment as a result of Fallon's initiation of counseling and complaints with the Equal Employment Opportunity Commission.[1] The district court granted Potter's motion for summary judgment,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The district court addressed some of Fallon's complaints as individual retaliation complaints and others as hostile work environment complaints. On appeal, Fallon has abandoned the individual retaliation claims, with the exception of Augustus' alleged comments

holding that Fallon had failed to establish causation between his EEOC activities and the alleged retaliation and retaliatory hostile work environment.

I

Fallon worked as a mail carrier in several Louisiana towns. He began working at the Denham Springs Post Office in 1998. In February 2000, Augustus became the postmaster at Denham Springs. Soon thereafter, Fallon alleges that numerous conflicts arose. Fallon initially filed discrimination and retaliation claims in federal district court, alleging that Augustus, an African American, discriminated against Fallon because Fallon was Caucasian and from New Orleans and because of Fallon's injury, which diminished his capacity to complete various work assignments. Potter filed a motion for summary judgment, urging that the court dismiss certain of Fallon's claims that he failed to timely exhaust through the administrative process and that Fallon's remaining claims failed as a matter of law because he could not establish that he suffered an adverse employment action, that similarly situated employees in his class were treated more favorably, or, for the retaliation claims, that he suffered injury or harm or that the Postal Service's legitimate reasons for its conduct were merely pretextual. In his opposition to Potter's motion for summary judgment, Fallon abandoned his discrimination claims based on race and disability,[2] leaving only his claims of retaliation and a retaliatory hostile work environment. He alleged retaliation from March 2000 "until the end of plaintiff's employment" that was "sequential, if not continuous." Potter replied

---

about Fallon's EEOC activity. The remainder of his claims fall under his allegations of a retaliatory hostile work environment. See Appellant's Brief at 18 n.2. ("Although each of the [instances] . . . of Augustus' harassment is addressed individually, it is Mr. Fallon's position that they must all be considered together as part of a hostile work environment that was pervasive, if not severe.").

[2] Opposition to MSJ (Oct. 11, 2006) ("To the extent that plaintiff has made race or disability claims, he abandons them.").

that Fallon had failed to make out a prima facie case for retaliation and that even if he did, there were legitimate, non-discriminatory reasons for Augustus' conduct. Furthermore, Potter urged, Fallon failed to show causation, as much of the alleged harassment occurred prior to his EEOC activity, and even if he had made out a prima facie case and shown that Potter's legitimate reasons were pretextual, the Fifth Circuit does not recognize a cause of action for a retaliatory hostile work environment.[3]

The district court granted Potter's motion for summary judgment, holding that Fallon had not made a prima facie case of retaliatory harassment because he was "unable to establish a causal link between the protected activity and the adverse employment action," and that even if Fallon had made a prima facie case, Fallon failed "to make the requisite showing that defendant's reasons [for the alleged harassment] were pretextual." Fallon appealed.

On appeal, Fallon alleges retaliatory incidents within several categories, which, combined, he urges, create a hostile work environment. First, Fallon alleges that Augustus subjected him to performance evaluations and observations more so than other employees, such as bolting a permanent observation chair in Fallon's mail van, recruiting outside observers to evaluate Fallon's casing rate,[4] skewing the results of performance tests, telling Fallon to place his mail case next to the seat in his van – contrary to postal standards – in order to increase his delivery speed, and punishing Fallon for his alleged failure to meet demonstrated performance by preventing him from casing newspapers before other mail and suspending him for fourteen days. Second, Fallon alleges that Augustus engaged in threatening behavior, assigning him to

---

[3] We need not reach this issue on appeal, as we hold that Fallon failed to establish a prima facie case of a retaliatory hostile work environment.

[4] "Casing" mail involves sorting the mail and placing it in separate sections of the mail case, according to Potter's brief.

a small cubicle, staring at him in a hostile manner, "bumping" him, and constantly counting Fallon's casing speed. Third, Fallon alleges that Augustus enforced policies against Fallon and not other employees, requiring Fallon to hold six inches of mail in his left hand while casing, preventing him from drinking beverages on the workroom floor, and investigating a bomb threat made by Fallon but failing to investigate similar threats made by other employees. Finally, Fallon alleges that Augustus exacerbated Fallon's medical problems and interfered with Fallon's attempts to obtain workers' compensation, assigning Fallon to difficult routes after he injured his left knee and shoulder, failing to inform him of various medical benefits and reimbursement opportunities for medical expenses, failing to report various of Fallon's injuries, and withholding medical forms and pulling forms from Fallon's files. On appeal, Fallon urges that all of these activities occurred as part of a retaliatory hostile work environment. In a separate individual retaliation claim, Fallon alleges that Augustus made six comments about Fallon's participation in EEOC activities.

II

We review the district court's grant of summary judgment de novo,[5] taking all facts and evidence "in the light most favorable to the non-movant. However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial."[6] Under the McDonnell Douglas burden-shifting framework for Title VII claims resting on circumstantial evidence,[7] the plaintiff must make a prima facie case for

---

[5] Lemaire v. La. Dept. of Transp. and Dev., 480 F.3d 383, 386 (5th Cir. 2007).

[6] Id. at 387 (citation and internal citation omitted).

[7] We address Fallon's single claim with direct evidence (Augustus' alleged comments about Fallon's EEOC activity) in the next section. Fallon argues that others of Augustus' actions, such as Augustus' investigation of Fallon's bomb threat, are "direct evidence" of

4

retaliation. If he succeeds in doing so, "the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action."[8] If the defendant provides such reasons, "'any presumption of retaliation drops from the case,'"[9] and the burden "shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination."[10]

To establish a prima facie case of retaliation, Fallon "must show '1) that [he] . . . engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.'"[11] For the "causal link" prong, Fallon must demonstrate that the adverse employment action would not have occurred "but for" the protected activity in order to prove unlawful retaliation, meaning that, to survive the summary judgment motion, he must show that there is a "conflict in substantial evidence" on this issue.[12] "Evidence is 'substantial' if it is 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.'"[13]

Fallon has failed to show a conflict in substantial evidence on the issue of causation for many of his claims. Although "[c]lose timing between an

---

retaliation; we are not persuaded.

[8] Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 511 (5th Cir. 2003).

[9] Baker v. Am. Airlines, Inc., 430 F.3d 750, 755 (5th Cir. 2005) (quoting Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005)).

[10] Gowesky, 321 F.3d at 511.

[11] Baker, 430 F.3d at 754 (quoting Septimus, 399 F.3d at 610).

[12] Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir. 1996).

[13] Id. (internal citation omitted) (quoting Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).

employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation,"[14] much of the harassment that allegedly contributed to the hostile work environment occurred before the EEOC activity and thus fails to create a disputed fact issue as to causation.

Fallon pled that he participated in two EEOC actions labeled as #195 and #166. In his opposition to Potter's motion for summary judgment, he alleged that #195 began with his "request for informal counseling on June 20, 2001," and that #166 began with his counseling request on April 11, 2002. Fallon also alleged that Augustus learned on April 13, 2000, that Fallon, while working elsewhere under a different supervisor, had filed an EEO complaint in 1994. Fallon did not, however, introduce evidence that establishes a conflict in substantial evidence as to whether Augustus' actions "would not have occurred but for" Augustus' learning of Fallon's EEOC activity that had occurred approximately six years earlier at another job.[15]

On appeal, Fallon argues that his first "protected activity" occurred not with the EEO claims or with Augustus' knowledge of Fallon's old EEO claim but rather on March 31, 2000, when a supervisor allegedly "required plaintiff to hold 6″ of flats in one arm."[16] Fallon "complained to Augustus that Bethely [another employee] did not have to do this. Augustus replied, 'Worry about yourself.'"[17] Fallon stated in his affidavit before the district court that he "did not expressly claim that this was racially motivated, but it was obvious that this was a racial

---

[14] Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997).

[15] Long, 88 F.3d at 308.

[16] Affidavit of Kenneth Fallon (Oct. 21, 2006).

[17] Id.

complaint."[18] Fallon also argues that on April 6, 2000, Fallon again complained that other employees were not required to hold six inches of mail while casing, stating in his deposition that he "asked Augustus if Bethely were going to have to hold 6" of flats." Although Fallon argues on appeal that he "abandoned all claims except that of retaliatory harassment based on all protected complaints of discrimination, not merely formal EEO complaints," his statements regarding the six-inch casing requirements do not constitute "protected activity" under Title VII.[19] We are persuaded that the first protected activity relevant to this case occurred on June 20, 2001, when Fallon commenced his first EEOC informal counseling. Much of the harassment alleged by Fallon occurred prior to these dates; for these claims, Fallon has failed to show a conflict in substantial evidence as to whether his protected activity caused the alleged retaliatory hostile work environment.[20]

---

[18] Id.

[19] See, e.g., Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) ("Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.") (citing 42 U.S.C. § 2000e-3(a)) (abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006)).

[20] The alleged "demonstrated performance examinations" and "covert observations" first occurred on April 17 and 19, 2000, according to Fallon's pleadings. Fallon alleged that on "April 13, 14, 15, 17, and 19, 2000," Augustus bumped him and timed his casing rate with a stop watch. Fallon alleged that on April 27, 2000, Augustus bolted the permanent observation chair in his van, that on May 1, 2000, "Augustus threatened plaintiff with disciplinary action for taking too much time to case and deliver the mail," that on May 8, 2000, "Augustus stated Fallon's casing time in front of other employees, embarrassing Fallon," and that on May 9, 2000, Augustus issued a letter of warning and a memorandum to Fallon, indicating that he was using "unauthorized and unjustified overtime" and stating the "results of the casing counting and route observations." Augustus' rejection of Fallon's request for overtime and his "14-day no time off suspension . . . for poor office procedures and failure to deliver the mail per demonstrated performance" allegedly occurred on October 5, 2000, and December 1, 2000, respectively. Fallon further alleged that Augustus refused to allow Fallon to drink a Coke at the cashier's work station on February 8, 2001, and told him to hold six inches of mail in his left arm while casing "both before and after he [Fallon] injured his left arm on March 29, 2001." Although he alleged that later Coke incidents occurred in January, February, and March of 2002, the first incident occurred earlier according to his pleadings. Fallon alleged

7

The harassment alleged by Fallon that occurred after Fallon commenced his EEOC activities in 2001 included, inter alia, 1) various statements by Augustus telling Fallon that he should drop his EEO claims, 2) assignment to a physically demanding route and other work that exacerbated his health problems, 3) telling Fallon that he should and could do his route in time, despite having received a report recommending that Fallon get surgery, 4) giving part-time and flexible employees work while assigning Fallon to less work, 5) continuing to prohibit Fallon from drinking Coke on the mail floor while allowing co-employees to drink on the floor, 6) failing to update Fallon's medical reports, 7) pulling medical records from Fallon's files, and 8) investigating a joking bomb threat that Fallon had made, while failing to investigate similar threats by other employees. Potter provided legitimate, non-discriminatory reasons for all of the alleged harassment,[21] and Fallon failed to meet his burden

that Augustus assigned him to inside duty and began "constant counting" of Fallon's casing on April 1, 2001, and that Augustus interfered with his receiving forms regarding eligibility for Continuation of Pay, and expense sheets for traveling to doctors in April of 2000, and that on April 23 "Augustus, in a sarcastic and threatening way, asked plaintiff, 'How you doing getting authorization to see your doctor?'"

[21] Potter alleged in his motion for summary judgment and his reply brief in support of his motion for summary judgment that Augustus assigned Fallon to various jobs – casing and different, less strenuous routes, for example – as a result of work limitation requirements from doctors. Explaining the alleged "staring" and "bumping," Potter argued that Augustus, as a supervisor, was required to observe Fallon, and that Augustus and Fallon worked in a small space; furthermore, Augustus is much taller than Fallon, he urged. Potter alleged that Augustus evaluated Fallon's work performance and issued warnings of underperformance because several outside evaluations showed that Fallon was casing at a rate below the standard required by the Postal Service handbook. Both of the outside evaluators provided declarations regarding Fallon's sub-standard casing speed. Augustus required Fallon to hold six inches of mail while casing because this is a Postal Service standard, he argued. Potter further alleged that Augustus assigned Fallon more casing work and fewer non-carrier duties after receiving a doctor's report indicating Fallon's work limitations. He assigned Fallon to less work after Fallon was relegated to light duty status as a result of his workers' compensation claim; light duty employees receive work only when work is available, as Fallon conceded in his pleadings. Potter stated that Augustus prohibited employees from drinking soft drinks on the work floor after an employee spilled liquid on the mail. And Potter alleged and showed, in response to Fallon's assertions that Augustus had withheld a CA-17 form and prevented it from being sent, that Fallon's medical reports in his August 6, 2002, (or August 5, as alleged

of persuasion to then show that Potter's reasons were pretextual.[22]  Although the district court did not fully address some of these incidents that allegedly created a retaliatory hostile work environment, we have addressed them and on de novo review find no error.[23]

## III

We now turn to Fallon's single claim of retaliation regarding Augustus' alleged comments about Fallon's EEOC activities.[24]  The district court did not

---

by Fallon) CA-17 form arrived at the Department of Labor; the Department of Labor rejected Fallon's second claim for Workers' Compensation because it found that the reports did not show that the first, on-the-job injury caused Fallon's recurring injuries alleged in his second claim, not because form CA-17 was untimely.  Even if the lateness of the first claim otherwise affected Fallon, as Fallon argues, Fallon's brief does not point us to any place in the record with facts, apart from Fallon's own pleadings and deposition (referring to affidavits that are not in the record), showing that Augustus pulled medical files or failed to send medical files or forms.  He argues that Cathy Evans, a supervisor, thought that Augustus was removing medical files from her office and that she exclaimed, "Oh, my God, could this be a conspiracy?"  But the record cites to which Fallon points are his own affidavits, not an affidavit from Evans.  Finally, Potter alleged that Augustus investigated Fallon's bomb threat because a co-worker of Fallon's gave Augustus a written statement reporting the threat; Potter provided a copy of the statement to the district court.

[22] See Baker, 430 F.3d at 754 (citing Patrick v. Ridge, 394 F.3d 311, 315-16 (5th Cir. 2004)) (once an employer has provided legitimate, non-discriminatory reasons for his conduct, he has met his burden of production, and plaintiff's burden of showing pretext on summary judgment "is one of persuasion, not merely production of evidence").  Fallon failed to meet this burden.

[23] Fallon's brief lists numerous alleged incidences of retaliation, such as Augustus' "bumping" of Fallon, bolting a permanent observation chair in his truck, and the failure to forward on a CA-17 report, and argues that "[t]he court ignored most of the above."  We are not persuaded that the court ignored most of Fallon's claims supporting his retaliatory hostile work environment.  The court discussed the CA-17 form, the alleged constant staring and counting of mail, outside observations of Fallon, and the observation chair.   Having also investigated Fallon's claims, including the "bumping" not mentioned by the district court, which, we note, allegedly occurred prior to Fallon's protected activity, we find no error.  See supra notes 20 and 21.

[24] Fallon has preserved this single individual retaliation claim on appeal, as he argues under "Issue No. 1," prior to his statement that we are to consider all of the alleged instances of harassment together under a hostile work environment claim, that "there are six utterances by Augustus in which he makes plain his intention either to cause Mr. Fallon to withdraw his EEO complaints or not to file anymore."

address this claim in its opinion.[25]  Fallon alleged below that Augustus said to him, "You just keep filing those EEO complaints and I promise you one thing – there won't be a person in this post office to testify against me," "You need to call her [an EEOC officer] and talk to her so you can drop this EEO," "You need to tell her you don't need redress. . . . cause you're canceling the EEO complaint," and "You'll never have anyone in this post office stand up for you.  If you continue to file these charges, I'll show you what you're up against."

The Supreme Court clarified the Title VII standard for retaliation in Burlington Northern and Santa Fe Railway Co. v. White.  The Court observed that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."[26]  Injury or harm turns on "whether a reasonable employee would have found the challenged action materially adverse," meaning the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[27] We are persuaded that Fallon's evidence presents a genuine fact issue[28] as to whether Augustus' statements would have discouraged a reasonable employee from continuing to pursue EEO claims, and that the district court erred in granting Potter's motion for summary judgment with respect to this single retaliation claim.

Accordingly, we AFFIRM in part and REVERSE in part.

---

[25] The district court addressed Fallon's claims in two separate sections, "retaliation" and "retaliatory hostile work environment," but it treated the Coke and the bomb threat incidents, rather than Augustus' EEOC comments, as the separate retaliation claims.  It did not discuss Augustus' alleged EEOC comments in either section of its opinion.

[26] 126 S.Ct. at 2414.

[27] Id. at 2415 (internal quotations and citations omitted).

[28] Whether or not an employer's actions are retaliatory is a fact issue for the jury.  See, e.g., Burlington N., 126 S.Ct. at 2416 (holding that there was sufficient evidentiary support for the jury's finding "that two of Burlington's actions amounted to retaliation").