# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50943

MARIA TEJADA,

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2015

Lyle W. Cayce
Clerk

Plaintiff–Appellant,

v.

THE TRAVIS ASSOCIATION FOR THE BLIND,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-997

Before REAVLEY, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Maria Tejada brought retaliatory-hostile-work-environment and constructive-discharge claims under Title VII against her former employer, the Travis Association for the Blind (TAB). The district court granted summary judgment in favor of TAB. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50943

## I

TAB is a nonprofit organization in Austin, Texas, "with a mission of employing, training, educating and empowering blind and visually impaired individuals to gain work skills and job experiences." Tejada, a legally blind woman with partial vision in one eye, began employment at TAB in December 2006.

Tejada worked in the binders department under the supervision of Sal Guzman. Guzman made comments about how he liked Tejada's breasts and buttocks. On several occasions, Tejada observed Guzman kissing another TAB employee, Clara Benavides. Before Tejada complained about Guzman's behavior, there was animosity between Tejada and Benavides. Tejada believes that Benavides treated her poorly because Guzman said that Tejada was beautiful. Benavides called Tejada names, made vulgar insults, and on one occasion, threatened Tejada with a knife.

In September 2007, Guzman told Tejada that if she smoked marijuana, she would have enough energy to have sex with Guzman and another employee. Tejada reported Guzman's behavior to TAB's Executive Director, Jerry Mayfield, and TAB's Human Resources Manager, Renee Penz. TAB suspended Guzman immediately, and after Tejada's account of the incidents was corroborated, Guzman's employment was terminated.

After Guzman's 2007 termination, Tejada alleges that TAB management and employees, including Benavides, subjected her to a hostile work environment because she complained about Guzman and caused his termination. We discuss Tejada's various allegations in detail below.

Tejada filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 12, 2010, in which she stated "[o]n or about August 23, 2010, I was told that management had received complaints from my coworkers that I was harassing them. A management

2

No. 14-50943

official told me what happened to Sal Guzman could happen to me." Tejada stated that she believed TAB was retaliating against her because of her 2007 complaint against Guzman. Neither the parties nor the record indicate the disposition of Tejada's 2010 EEOC charge.

On June 2, 2011, Tejada could no longer "take the stress and pressure that [she] was forced to work under" and resigned.

Tejada filed her second charge with the EEOC on March 1, 2012. She alleged that TAB harassed and retaliated against her for filing a complaint against Guzman. After receiving her right-to-sue letter, Tejada filed suit in federal district court alleging a retaliatory hostile work environment and constructive discharge in violation of Title VII. Tejada alleged that because she filed an EEOC charge in 2010 and lodged a complaint against Guzman in 2007, TAB retaliated against and harassed her through disparate treatment and isolation, threatening to suspend her without pay, and the various confrontations and allegations involving other TAB employees.

TAB moved for summary judgment. The magistrate judge recommended granting the motion because the evidence did not support a prima facie case on either of Tejada's claims and because her constructive-discharge claim was untimely. The district court agreed and granted TAB's motion for summary judgment. Tejada appeals.

## II

We review the district court's grant of summary judgment de novo.[1] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[1] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (citing *Ford Motor Co v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

as a matter of law."[2]  "If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial."[3]  The evidence should be viewed in the light most favorable to the nonmovant, in this case, Tejada.[4]

## III

Tejada complains that (1) in retaliation for reporting Guzman's inappropriate comments leading to Guzman's termination in 2007 and for filing an EEOC charge in 2010, she was subject to a hostile work environment, and (2) the harassment against her rose to such an intolerable level that she was constructively discharged in 2011.  We address each claim in turn.

## A

This court has yet to determine whether a Title VII retaliation claim based on a hostile work environment is cognizable.[5]  Because Tejada failed to establish a prima facie case of a retaliatory hostile work environment, we need not decide this issue.[6]

To establish a prima face case of Title VII retaliation, a plaintiff must show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action."[7]  "[T]he

---

[2] FED. R. CIV. P. 56(a).

[3] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (citing *Steadman v. Tex. Rangers*, 179 F.3d 360, 366 (5th Cir. 1999)).

[4] *Etienne*, 778 F.3d at 475 (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

[5] *See Fallon v. Potter*, 277 F. App'x 422, 424 & n.3 (5th Cir. 2008) (per curiam); *Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (per curiam).

[6] *See Fallon*, 277 F. App'x at 424 n.3; *Bryan*, 217 F. App'x at 293.

[7] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)); *see also, e.g., Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928-29 (8th Cir. 2007) (applying the standard for a prima facie case of Title VII retaliation in the context of a retaliation claim based on hostile work environment); *Noviello*

plaintiff must show that the protected activity was the 'but for' cause of the retaliation."[8]    Because "[e]mployers rarely leave concrete evidence of their retaliatory purposes and motives,"[9] we may consider certain factors when determining causation: the employee's disciplinary record; whether the employer followed its typical policy and procedures when managing the employee; and the temporal connection between the employee's conduct and the alleged retaliation.[10]    The parties do not dispute that Tejada's 2007 complaint against Guzman for sexual harassment and 2010 EEOC charge constitute protected activities.

Tejada describes numerous events that she alleges amount to a retaliatory hostile work environment.  The first incident occurred two months after Tejada's September 2007 complaint against Guzman.  At this time, Tejada was working in TAB's trouser-belts department.  After being temporarily reassigned to the binders department due to an equipment malfunction, Tejada left work without permission and without providing an explanation.  Corinne Randall, TAB's Production Manager, subsequently warned Tejada that if she walked off the job again, she would be subject to a three-day suspension.  Tejada did not explain to Randall why she left.  Tejada now asserts that she refused to work in binders because Benavides worked in binders, and Tejada worried that Benavides would harass her.  Tejada also states the binders department reminded her of Benavides's and Guzman's

---

v. City of Boston, 398 F.3d 76, 88-90 (1st Cir. 2005) (same); Ray v. Henderson, 217 F.3d 1234, 1240, 1244-45 (9th Cir. 2000) (same).

[8] Willis, 749 F.3d at 318 (citing Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996)).

[9] Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir. 1994).

[10] See id.

harassment. There is no record evidence linking Randall's warning to Tejada's complaint against Guzman.

The second incident occurred in May 2009, nearly two years after Tejada's complaint against Guzman. Benavides and Tejada were involved in a confrontation during which Benavides told Tejada to "clock out and step outside" and blamed Tejada for Guzman's termination. Benavides also said that she would beat up Tejada if she saw Tejada "around town." However, even before Tejada complained of Guzman's inappropriate behavior, Benavides had engaged in similar behavior by calling Tejada names and threatening Tejada with a knife. Furthermore, after a supervisor informed Tim Gates, the Senior Production Manager, of the issue, Gates responded by speaking separately with Tejada and a witness to understand the situation and then met with Benavides in his office to inform her that such behavior was not acceptable. Benavides said that she would no longer threaten employees. Tejada states that Benavides's subsequent promotion to assistant supervisor contributed to the hostile work environment; however, the incidents of which Tejada complains did not occur while Benavides was the assistant supervisor over Tejada.

The next incident occurred on April 28, 2010, when George Adams, a TAB employee, complained that Tejada had been speaking poorly about him to coworkers. Randall interviewed another employee who corroborated the information that Adams had given. When Randall discussed Adams's complaint with Tejada, she denied any wrongdoing, but Randall warned Tejada that the complained-of behavior was unacceptable and could result in a three-day suspension if it continued. Tejada was upset by her conversation with Randall and decided to place herself on three-day suspension. Randall reiterated to Tejada that she had not been suspended, but Tejada left work determined to "prove" that she had not harassed her coworkers. When Tejada

returned to work, Penz, the Human Resources Manager, suspended her for three days for suspending herself in contravention of TAB policy. There is no record evidence linking Randall's warning or Penz's suspension of Tejada to Tejada's complaint against Guzman.

On August 19, 2010, approximately three years after Guzman's termination, Tejada overheard Benavides calling Tejada a "bruja," the word for "witch" in Spanish, and laughing. Tejada informed her supervisor, Irene Pineda. Pineda documented the allegation and notified Penz, who decided the allegation did not warrant further action because it was speculation on Tejada's part that Benavides was talking about Tejada. The same day, Benavides filed a complaint against Tejada alleging that Tejada made disparaging comments about Benavides's family and Mexican immigrants.

A few days later, Mayfield met with Tejada and Penz to discuss Benavides's complaint. Using Guzman as an example, Mayfield told Tejada that harassment is not tolerated and can result in termination. Mayfield advised Tejada "that she is not to laugh at, mimic, or make negative comments to or about anyone." Tejada inquired if Mayfield investigated her complaints about Benavides, and Mayfield said that he had no complaints from Tejada and that the purpose of the meeting was to discuss the complaints against her. Again, there is evidence that the sour relationship between Tejada and Benavides predated Tejada's complaint about Guzman, and Mayfield's warning regarding termination was in the context of addressing the allegations made by Benavides. To the extent Tejada complains that TAB failed to investigate her complaint against Benavides in violation of TAB policy, there is no indication that this failure was because of Tejada's complaint against Guzman. There is also a significant gap in time between Tejada's complaint about Guzman in September 2007 and the events in August 2010.

Tejada asserts that TAB management, including Penz and Mayfield, told her coworkers to stay away from Tejada because she was "trouble" and that she was forced to work in isolation. The record does not include dates for these incidents, and there is no evidence linking these actions to Tejada's protected activities.

Tejada filed her EEOC charge in October 2010. The events postdating the charge are as follows. On May 16, 2011, TAB employee Jose Garza complained that Tejada would curse at him both verbally and in sign language. Randall told Garza "to just ignore Ms. Tejada." Human Resources concluded because there were no witnesses to the complained-of behavior, no further action could be taken. That same month, Ricardo Piedra, Tejada's friend and coworker, was called to Mayfield's office over the loudspeaker. Tejada alleges that "[a]t that time, [Piedra] was one of only a very few of the employees left at TAB that would still communicate with [Tejada]." But after Piedra was called to Mayfield's office, "Piedra stopped speaking to [Tejada] and would simply not respond when [she] would speak to him." During that month, Tejada was also issued a written warning and placed on probation for sixty days for attendance issues. On June 1, 2011, another employee, Andy Mireles, complained that Tejada shoved her out of his way because he accidentally hit her foot with his cane. Tejada maintains that all of the various allegations made by her coworkers about her conduct are false. Tejada also alleges she continued to be isolated from "the majority of [her] co-workers and supervisors" and assigned to work alone.

Regarding Garza's complaint, after TAB's Human Resources department determined that there were no witnesses to the alleged behavior, no further action was taken, an outcome favorable to Tejada. Garza's and Mireles's complaints make no mention of the EEOC charge or Tejada's complaint against Guzman. Additionally, Tejada conceded that she had attendance problems

leading up to her probation. Lastly, there is no evidence in the record that Mayfield told Piedra to ignore Tejada, and even if he did, there is no evidence linking this instruction to Tejada's complaint against Guzman or Tejada's EEOC charge.

Mayfield had a second "follow-up" meeting with Tejada; the parties dispute whether this meeting occurred in September 2010 or May 2011. Either way, it is temporally removed from both Tejada's complaint about Guzman in 2007 and the October 2010 EEOC charge. Tejada alleges that when she entered Mayfield's office, Mayfield asked her how long it had been since Guzman had been fired. He stated that it had been about three years. According to Tejada, Mayfield then said that if Tejada did not stop harassing her coworkers, she would be fired like Guzman was. Tejada again inquired about her complaints against Benavides, and Mayfield reiterated that he had received no such complaints and that the purpose of the meeting was to discuss the complaints against Tejada. Like the first meeting, this meeting was part of Mayfield's response to the allegations that Tejada had harassed coworkers, and there is no record evidence indicating that Tejada's complaint against Guzman or the EEOC charge was the but-for cause of Mayfield's warning regarding termination.

For these reasons, Tejada has failed to raise a genuine factual dispute regarding the requisite causal link between the protected activities and the alleged retaliation.

**B**

Tejada also argues that the hostile work environment rose to such an intolerable level that she was constructively discharged.

No. 14-50943

Title VII proscribes an employer from discharging an employee "because of" his or her "race, color, religion, sex, or national origin."[11] "An employer 'is responsible for a constructive discharge in the same manner that it is responsible for the outright discriminatory discharge of a charging party.'"[12] To establish a constructive discharge under Title VII, "a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that she: (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which she was discharged; and (4) was replaced by a member of an unprotected class."[13] Tejada does not argue that she was subject to constructive discharge "because of" her "race, color, religion, sex, or national origin"; rather, she claims she was subject to a hostile work environment in retaliation for her protected activities that rose to such a high level that she was constructively discharged. Accordingly, Tejada cannot establish constructive discharge under Title VII's substantive provisions.[14]

To the extent Tejada argues that she was constructively discharged in retaliation for her protected activities, she must establish the same prima facie case as is required for a retaliation claim.[15] Tejada's claim relies on the same

---

[11] 42 U.S.C. § 2000e-2(a)(1); *accord Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir. 1997).

[12] *Penn. State Police v. Suders*, 542 U.S. 129, 142 (2004) (quoting 2 EEOC Compliance Manual § 612.9(a) (2002)).

[13] *Faruki*, 123 F.3d at 318 (citing *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995) (per curiam) and *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990)); *accord Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003) (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)).

[14] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct."); *see also Faruki*, 123 F.3d at 318-19.

[15] *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439-40 (5th Cir. 2005) (outlining the requirements for a prima facie case of retaliation based on constructive discharge).

No. 14-50943

set of facts as her retaliatory-hostile-work-environment claim, and thus, it fails for the reasons already stated.

\* \* \*

The judgment of the district court is AFFIRMED.